# Exhibit 27


Copyrighted Material
IRWIN LIBRARY
of Investment & Finance
VALUING
Intangible Assets
Comprehensive Guide
Presents Three Approaches:
Cost Approach, Market Approach, and Income Approach
Key Examples Help Guide You Through the Process
Robert F. Reilly • Robert P. Schweihs
Copyrighted Material

# Valuing Intangible Assets

**ROBERT F. REILLY, CFA, ASA, CPA**
Managing Director
*Willamette Management Associates*

**ROBERT P. SCHWEIHS, ASA**
Managing Director
*Willamette Management Associates*

**McGraw-Hill**
New York San Francisco Washington, D.C. Auckland Bogotá
Caracas Lisbon London Madrid Mexico City Milan
Montreal New Delhi San Juan Singapore
Sydney Tokyo Toronto

Copyrighted Material

**Library of Congress Cataloging-in-Publication Data**

Reilly, Robert F.
Valuing intangible assets / Robert F. Reilly, Robert P. Schweihs.
p. cm.
ISBN 0-7863-1065-0
1. Intangible property—Valuation. I. Schweihs, Robert P.
II. Title.
HF5681.I55R45 1998
657'.7—dc21 98-13959
CIP

McGraw-Hill
*A Division of The* **McGraw-Hill** *Companies*

Copyright © 1999 by Robert F. Reilly and Robert P. Schweihs. All rights reserved. Printed in the United States of America. Except as permitted under the United States Copyright Act of 1976, no part of this publication may be reproduced or distributed in any form or by any means, or stored in a database or retrieval system, without the prior written permission of the publisher.

2 3 4 5 6 7 8 9 0 DOC/DOC 0 3 2 1 0

ISBN 0-7863-1065-0

*The sponsoring editor for this book was Roger Marsh and the production supervisor was Suzanne W. B. Rapcavage. It was set in Palatino by Inkwell Publishing Services.*

*Printed and bound by R.R. Donnelley & Sons Company.*

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that neither the author nor the publisher is engaged in rendering legal, accounting, or other professional service. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

—*From a Declaration of Principles jointly adopted by a Committee of the American Bar Association and a Committee of Publishers.*

McGraw-Hill books are available at special quantity discounts to use as premiums and sales promotions, or for use in corporate training programs. For more information, please write to the Director of Special Sales, McGraw-Hill, 11 West 19th Street, New York, NY 10011. Or contact your local bookstore.

This book is printed on acid-free paper.

Copyrighted Material

1. Reproduction cost.
2. Replacement cost.

There are subtle but important differences in the definitions of these two types of cost.

Reproduction cost contemplates the construction (or purchase) of an exact replica of the subject intangible asset. Before appropriate adjustments are made for the purposes of deriving an indication of value, reproduction cost does not consider either the market demand for or the market acceptance of the subject intangible. In other words, before the requisite valuation adjustments, the reproduction cost estimate does not answer (or even consider) the question of whether anyone would even want an exact replica of the subject intangible asset.

Replacement cost contemplates the cost to recreate the utility of the subject intangible asset, but in a form or appearance that may be quite different from an exact replica of the actual intangible property subject to appraisal. Utility is an economic concept that refers to the ability of the replacement intangible asset to provide an equivalent amount of satisfaction as the subject intangible.

It is noteworthy that while the replacement intangible asset performs the same task as the subject intangible, the replacement asset may be "better" (in some way) than the subject. In that case, the replacement intangible may yield more satisfaction (i.e., generate more utility) than the subject intangible. If this is the case, the analyst should be careful to adjust for this factor in the obsolescence estimation procedure of the replacement cost analysis.

Unlike the reproduction cost concept, the replacement cost concept does consider the market demand and the market acceptance for the subject intangible asset, at least in part. That is, if there are elements or components of the subject intangible asset that generate little or no market demand, they are not included in the replacement intangible. Since these undesirable elements or components add no value to the subject intangible, they are not designed into the replacement intangible.

Particularly with regard to the analysis of intellectual properties, it may also be useful to analyze costs from the perspective of creation cost versus recreation cost.

Creation cost considers the cost to originally create the subject intangible asset from its conceptual inception, with no guideline (such as a previous version of the subject intangible) for the current creator to use as a point of reference.

Recreation cost considers the cost to duplicate the subject asset, assuming that the current recreator possesses the knowledge, experience, and expertise already developed during the (actual) original creation process. For example, the recreation cost concept would assume that a guideline (such as a previous version of the subject intangible) does exist as a point of reference during the intangible asset recreation process.

There are several other definitions of cost that may be encompassed by the cost approach to intangible asset valuation. For example, some analysts consider a measure of cost avoidance as a cost approach methodology. This method quantifies some measure of either historical or prospective costs that are avoided (i.e., not incurred) by the intangible asset owner due to his or her ownership of the subject intangible property. Some ana-

Some analysts prefer to use the terms *reproduction cost new* and *replacement cost new*. For our purposes, we will treat these terms as synonyms for *reproduction cost* and *replacement cost*.

As these definitions imply, there are important conceptual differences between reproduction cost and replacement cost. However, the ultimate valuation indications derived from these two methods should not be materially different. In fact, other than for some necessary rounding differences, they should be the same.

Of course, the reproduction cost and the replacement cost are likely to be materially different for the same intangible asset. Then how can the value indications not be materially different? The answer is that the allowances for obsolescence should also be different, depending upon the base from which the obsolescence is measured—that is, reproduction cost or replacement cost. In other words, the selection of the reproduction cost method versus the replacement cost method should not materially influence the final value estimate. Therefore, the analyst should select the cost approach method to use based upon which method has the better quantity and quality of available pricing data.

Additional classifications of cost are relevant to intangible asset analysis that may not be relevant to tangible personal property or real estate valuation. These classifications are more along the lines of distinctions of cost as opposed to types of cost. Nonetheless, they do represent an important consideration with regard to intangible asset analysis. The additional classifications of cost are *creation cost* and *recreation cost*.

These two classifications of cost distinguish themselves by measuring how far back in the intangible asset production process costs should be measured. Therefore, both reproduction cost and replacement cost can be measured on either a creation cost basis or a recreation cost basis.

Distinguishing between these two classifications of cost is not relevant in the analysis of tangible assets. For example, there is no uncertainty in the appraisal of productive machinery or of commercial real estate as to how far back in the asset production process costs should be measured. In the case of both the machine and the building, costs are measured from the time just before a set of blueprints, production schematics, or engineering drawings are prepared. In other words, the machine or the building have already been conceptually designed and engineered. They need only to be structurally designed and engineered and then built.

The engineer's time to design a particular machine—for example a steam engine—is included in the cost approach to equipment appraisal. Likewise, the architect's time to design a steel-framed, brick veneer office building is included in the cost approach to real estate appraisal. However, the engineering time required to originally develop the concept of a steam engine and the architectural time required to originally conceive of the first multistory steel-framed office building structure are not included in the analyses. In the appraisal of equipment and real estate, we assume that engineers and architects don't have to create original technology. We assume that there is little original intellectual content to the designs and drawings because engineers already know the basics of steam engines and architects already know the basics of steel frame designs.

In every steam engine, there is at least one wheel (often with sprockets). What if our engineer had to design the first wheel? In other words, what if our engineer had to invent the wheel before he or she could build the steam

engine? In that case, there would be a great deal of original intellectual content in the designs and drawings. But isn't that true of many intangible assets? They contain a great deal of original intellectual content. Many intangible assets, regardless of type, are unique, innovative, and proprietary. In their own ways, they are somewhat analogous to the newly invented wheel.

In a tangible asset analysis, we are usually concerned with *recreation cost*. We assume that the engineer or the architect does not have to reinvent the wheel. We assume that the original intellectual content is well known to the creator of the machine or the building. While our valuation can focus on either the reproduction cost or the replacement cost of all of the structural components of the machine or building, they are both indications of recreation cost. In other words, we don't include the time, effort, and expense of inventing the wheel.

With regard to intangible assets, the analyst should consciously decide whether to consider creation cost or recreation cost in the valuation. Recreation cost assumes that the original intellectual content is already known. Creation cost assumes that the original intellectual content has to be created or invented as part of the intangible asset.

Determining which classification of cost is relevant in each analysis is a function of the type of intangible asset; the purpose and objective of the analysis; and most importantly, the degree of uniqueness or propriety of the original intellectual content component of the subject intangible asset. Before beginning the valuation, the analyst should decide whether to estimate creation cost or recreation cost. That decision should be adequately documented in the cost approach analysis and communicated in the reporting of the valuation results.

## COMPONENTS OF COST

The analyst has some latitude in the selection of the appropriate type of cost to estimate. The same cannot be said for the selection of the components of cost to be included in the analysis.

Regardless of the type of cost being estimated (e.g., reproduction, replacement, or other) five components of cost are generally included in the analysis. The five components of cost are:

1. Material.
2. Labor.
3. Overhead.
4. Developer's profit.
5. Entrepreneurial incentive.

The components of cost are sometimes referred to as elements of cost. Regardless of which term is used, analysts have little latitude in the selection of which factors to consider.

Material costs include expenditures and accruals related to the tangible elements of the intangible asset development process. Typically, material costs do not represent a significant percentage of the overall cost of intangible asset development, of course, because there are typically few tangible manifestations of an intangible asset.

Nonetheless, material costs should not be ignored in the cost approach analysis. Such costs may include computer diskettes, integrated

new development process compared to the relatively low risk of using the last generation of technology, consumer brands, computer software, and so on.

All five components of cost—material, labor, overhead, developer's profit, and entrepreneurial incentive—should be considered as part of a comprehensive cost approach analysis to intangible asset value.

## WHEN DOES COST INDICATE VALUE?

As we have said, cost does not necessarily equal value. Nonetheless, the cost approach is one of the three fundamental approaches to intangible asset valuation. At what point does the cost approach provide a reasonable indication of value? The answer is when two conditions are met: The first condition is that the measure of cost included in the analysis considers all of the cost components discussed in the previous section. The second condition is that the measure of cost included in the analysis is reduced for all forms of obsolescence.

Simply put, if all components of cost, including entrepreneurial incentive, are included in the analysis and if all forms of obsolescence are subtracted from the analysis, then the cost approach analysis provides a meaningful indication of value. Although the concept of cost (of and by itself) is not the same as the concept of value, the cost approach, when properly applied, provides one of the foundational indications of value. Essentially, the mistakes that many analysts make are defining the components of cost too narrowly and ignoring one or more of the forms of obsolescence. In either of those cases the cost approach analysis is simply incomplete, and an incomplete analysis leads to an incorrect indication of value.

When estimating the cost of a new intangible asset, the analyst should adjust the cost estimate for all appropriate forms of obsolescence, whether the cost new that is estimated is reproduction cost, replacement cost, or some other measure of current cost. This is done because the intangible asset subject to analysis is not new; it is a seasoned intangible asset. The new intangible asset (however defined) will likely be superior in some way to the subject intangible. Therefore, the analyst has to adjust the new intangible asset in order to make it more like the subject intangible asset. This adjustment process requires the quantification of obsolescence.

Of course, if the subject intangible asset is, in fact, brand new, then it is not necessary to recognize any obsolescence in the cost approach analysis. Likewise, if the subject intangible asset is in like-new condition, albeit in fact a seasoned intangible asset, then it may be appropriate to recognize little or no obsolescence in the cost approach analysis.

The forms of obsolescence that are generally considered in the cost approach analysis of intangible assets are: physical deterioration, functional obsolescence, technological obsolescence, and external obsolescence.

Physical deterioration is the reduction in the value of an intangible asset due to physical wear and tear resulting from continued use. It is unlikely (but not impossible) for most intangible assets to experience any appreciable effects of physical deterioration.

Functional obsolescence is the reduction in the value of an intangible asset due to its inability to perform the function (or yield the economic utility) for which it was originally designed. This can occur even when the

intended function of the intangible asset is still a valid functional objective. This simply means that, over time, most intangible assets (but not all intangible assets) do not perform as well as they used to (however "well" is measured). Functional obsolescence may be one reason why the subject intangible asset typically becomes less than the ideal replacement for itself.

Technological obsolescence is a decrease in the value of an intangible asset due to improvements in technology. Technological obsolescence is another reason why the subject intangible asset typically becomes less than the ideal replacement for itself. Technological obsolescence occurs when, due to improvements in design or engineering technology, a new replacement intangible asset produces a greater standardized measure of utility production than the subject intangible asset.

External obsolescence is a reduction in the value of the subject intangible asset due to the effects, events, or conditions, that are external to, and not controlled by, the current use or condition of the intangible asset. The impact of external obsolescence is typically beyond the control of the intangible asset's owner. There are two subcategories of external obsolescence: locational obsolescence and economic obsolescence. Except for real estate–related intangible assets (e.g., easements, development rights, building permits), locational obsolescence does not typically affect intangible assets. Therefore, we will focus our discussion of external obsolescence on the identification and quantification of economic obsolescence.

When identifying and quantifying the amounts of physical deterioration (if any), functional obsolescence, technological obsolescence, and economic obsolescence related to the subject intangible asset, consideration of the subject asset's actual age and its expected remaining useful life is essential to the proper application of the cost approach analysis.

Using the cost approach analysis, a typical formula for estimating an intangible asset's replacement cost is:

Reproduction cost new – Curable functional and technological obsolescence
= Replacement cost new

In order to estimate the intangible asset value based on the estimate of cost new (i.e., either reproduction cost or replacement cost), the following formula is typically used:

Replacement cost new – Physical deterioration – Economic obsolescence
– Incurable functional and technological obsolescence = Value

Most forms of obsolescence can be categorized as either curable or incurable. An intangible asset's deficiencies are considered curable when the prospective economic benefit of enhancing or modifying the intangible asset exceeds the current cost (in terms of material, labor, and time) to change the intangible asset. An intangible asset's deficiencies are considered incurable when the current cost of enhancing or modifying the intangible (in terms of material, labor, and time) exceeds the expected future economic benefits of improving the intangible asset.

Since the causes of economic obsolescence are often external to the subject intangible asset itself, economic obsolescence is often considered to be incurable. Even if the cost–benefit relationship were such that the intangible asset owner would be motivated to cure the deficiency, it is not within the control of the intangible asset owner to do so.